SO ORDERED: March 24, 2021.



_____
James M. Carr
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DANNY JOE WELCH, | ) | Case No. 16-07211-JMC-7A |
| | ) | |
| Debtor. | ) | |

_____

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING MOTION TO HOLD CREDITOR ROSEMARY WELCH IN CONTEMPT FOR VIOLATION OF DISCHARGE INJUNCTION

THIS MATTER came before the Court on the *Motion to Hold Creditor Rosemary Welch in Contempt for Violation of Discharge Injunction* filed by Danny Joe Welch ("Danny") on October 29, 2018 [Docket No. 45] (the "Motion"). The Court held a hearing on the Motion on April 22, 2019,[1] March 9, 2020[2] and September 21, 2020 (collectively, the "Hearing").

At the conclusion of the Hearing, the Court announced its conclusion that it would hold Rosemary Welch ("Rosemary") in civil contempt for her "post-discharge action taken to enforce a judgment entered by the state court in a contract action." [*See* Docket No. 79.] The Court

---

[1] At such hearing, it was decided that the Motion would be heard with the trial of the parties' Adversary Proceeding No. 19-50002 (the "Adversary Proceeding").

[2] Danny's exhibits 1-25 and Rosemary's exhibits 1-18C were admitted without objection.

invited Danny's counsel to file an affidavit regarding attorney's fees incurred in connection with this matter by September 25, 2020, and Rosemary was given the opportunity to file by October 9, 2020 a response and/or a request for a further hearing to present testimony or cross examine Danny's counsel. [*See* Docket No. 79.] On September 25, 2020, Danny filed his *Attorney Fee Affidavit*. [Docket No. 80.] On or around October 8, 2020, Rosemary's counsel advised the Court that Rosemary would not file a formal response and asked that the Court consider any award of sanctions in the context of Rosemary's arguments. On or around October 15, 2020, the Court instructed the parties to submit proposed findings of fact, conclusions of law and order.

The Court, having reviewed and considered the evidence and proposals submitted by the parties; having heard and considered the presentations and arguments of counsel at the Hearing and in their respective briefs; having taken judicial notice of the docket in Adversary Proceeding No. 19-50002 (the "Adversary Proceeding") and the respective dockets in bankruptcy case no. 11-11169-JMC-7A ("Rosemary's 2011 Case"), bankruptcy case no. 16-07211-JMC-7 ("Danny's Case") and bankruptcy case no. 17-06878-RLM-13 ("Rosemary's 2017 Case"); and being otherwise duly advised, now enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by F. R. Bankr. P. 7052.

## **Findings of Fact**

The Court makes the following findings of fact:[3]

1.     Danny and Rosemary were married on May 27, 2000.

---

[3] These findings of fact are taken largely from the *Findings of Fact and Conclusions of Law* ("AP Findings and Conclusions") entered by the Court on July 28, 2020 in the Adversary Proceeding and the underlying evidence cited therein [Adversary Proceeding Docket No. 26], which is incorporated herein by this reference, as well as Danny's Ex. 17, the Chronological Case Summary of the Contract Action (as defined below).

2. Paragraph 16 of the parties' *Premarital Agreement* dated May 27, 2000 purports to waive any right to alimony between the parties in the event of divorce or dissolution of marriage.

3. One child was born during Danny and Rosemary's marriage.

4. Several versions of a one-sentence document (the "Contract") were alleged by Rosemary to obligate Danny to pay the parties' monthly mortgage obligation.

5. On September 3, 2003, the parties were divorced by a *Decree of Marriage Dissolution* (the "Divorce Decree") entered by Monroe Circuit Court, the Honorable E. Michael Hoff presiding (the "Divorce Court"), cause no. 53C01-0305-DR-00326 (the "Divorce Action").

6. On May 17, 2004, an *Order Modifying Decree* was entered in the Divorce Action that modified the Divorce Decree to include an obligation for Danny to pay half of the parties' monthly mortgage payments.

7. On October 25, 2004, the Divorce Court entered an *Order Vacating Payment Order and Money Judgment* (the "Vacating Order") that read in relevant part:

> An Order Modifying Decree was issued in this case on May 17, 2004 that required the Respondent, Danny J. Welch, to pay one-half of the monthly mortgage payment to Beneficial Finance. … The Order Modifying Decree was based upon a written promise [*i.e.*, the Contract] to pay one-half of that monthly mortgage payment signed by Danny J. Welch dated April 1, 2002, and submitted to the court by Petitioner Rosemary C. Welch on April 29, 2004. The Court finds that the written promise signed by Danny J. Welch was not signed as a part of the parties' divorce proceedings, and was not intended as a property settlement agreement. The divorce decree should not have been modified to require Respondent to pay one-half of the Petitioner's future mortgage payments. That order is herby vacated and set aside.

8. On December 28, 2004, Rosemary filed a breach of contract action against Danny in Monroe Circuit Court, the Honorable Stephen R. Galvin then presiding (the "Plenary Court"), cause no. 53C06-0412-PL-02328 (the "Contract Action"). Rosemary alleged that Danny had failed to comply with the payment terms of the Contract.

9.  At the May 6, 2005 bench trial in the Contract Action, neither party testified that the Contract was intended to provide child support.

10. On May 26, 2005, the Plenary Court entered a judgment (the "Judgment") in the Contract Action in favor of Rosemary and against Danny in the amount of $59,362.76 together with statutory interest and costs.

11. Rosemary attempted to enforce the Judgment, prior to the filing of Danny's Case, through proceedings supplemental in the Contract Action, until the Plenary Court removed the Contract Action from its active docket on June 1, 2009.

12. Rosemary did not disclose the Judgment she had against Danny on her bankruptcy schedules when Rosemary commenced Rosemary's 2011 Case on September 1, 2011.  On December 20, 2012, Rosemary received a general discharge in Rosemary's 2011 Case.  Per the chapter 7 trustee, $3,579.79 was paid to unsecured creditors holding allowed claims in the total amount of $17,864.36.

13. On May 28, 2015, after receiving a general discharge in Rosemary's 2011 Case, Rosemary wrote to the Plenary Court to seek enforcement of the Judgment.

14. On September 18, 2016, Danny filed Danny's Case.  On October 17, 2016, Danny listed the Judgment owing to Rosemary on his Schedule E/F as an unsecured debt.  On November 7, 2016, Danny's Case was converted from a chapter 13 case to a chapter 7 case.  On February 22, 2017, Danny received a general discharge (the "Discharge").  On October 11, 2017, Danny's Case was closed.

15. On April 13, 2017, Rosemary timely filed two (2) proofs of claim in Danny's Case – relevant here, a $142,379.50 unsecured claim based on the Judgment, alleging it was

"money advanced in the nature of child support" entitled to priority as a domestic support obligation ("DSO") under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).[4]

16. On September 11, 2017, Rosemary commenced Rosemary's 2017 Case. Rosemary's schedules, filed on her behalf by counsel, do not disclose the Judgment. On May 14, 2019, Rosemary received a general discharge in Rosemary's 2017 Case. The *Chapter 13 Standing Trustee's Final Report and Account* reflects that all allowed unsecured claims ($787.33) were paid in full.

17. On January 3, 2018, Rosemary wrote to the Plenary Court (called *Correspondence* on the docket of the Contract Action) to seek enforcement of the Judgment.

18. On January 11, 2018, Danny filed correspondence with attached copies of documents from this Court in the Contract Action.

19. The Plenary Court set a hearing for March 19, 2018 in the Contract Action on Rosemary's attempts to enforce the Judgment.

20. On March 13, 2018, Danny's counsel entered their appearances in the Contract Action.

21. On March 13, 2018, Danny, by counsel, filed a *Motion to Dismiss Plaintiff's Motion for Proceeding Supplemental and Notice to Plaintiff*.

22. On March 19, 2019, a hearing was held in the Contract Action on Rosemary's *Correspondence* and Danny's *Motion to Dismiss*. Danny presented argument on the *Motion to Dismiss*. Rosemary requested a continuance. The hearing was reset to May 21, 2018.

23. After a few continuances, the hearing in the Contract Action was reset to November 8, 2018.

---

[4] Unless otherwise noted, all statutory references herein are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

24. On October 17, 2018, Danny's Case was reopened.

25. On October 18, 2018, Danny filed a *Motion to Stay Proceedings or in alternative Motion for Enlargement of Time* in the Contract Action.

26. On October 30, 2018, Danny filed a *Motion for Order on Motion to Stay or Alternative Motion for Extension* in the Contract Action.

27. On November 1, 2018, Rosemary filed a *Response in Opposition to Imposing Stay or Granting Extension of Time* with attachments in the Contract Action.

28. Also on November 1, 2018, Danny filed *Defendant's Reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss* with attachments in the Contract Action.

29. On November 8, 2018, the Plenary Court held a hearing on Danny's *Motion to Stay* in the Contract Action. Danny appeared in person and by counsel. Rosemary appeared in person and by counsel. Argument was heard and exhibits were offered and admitted by the Plenary Court.

30. On December 21, 2018, the Plenary Court issued an *Order of Stay* in the Contract Action, pending further proceedings in Danny's Case.

31. On October 29, 2018, Danny filed the Motion seeking actual damages, legal fees, and costs pursuant to § 524.

32. On July 28, 2020, the Court entered its AP Findings and Conclusions in the Adversary Proceeding, concluding "that the Debt is not excepted from the Discharge pursuant to § 523(a)(5) and that enforcement of the Debt is barred by judicial estoppel."

## Conclusions of Law

A. Any finding of fact above will also be a conclusion of law, and any conclusion of law will also be a finding of fact to support the judgment of the Court.

B. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and

157(b)(2).

    C.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    D.      Pursuant to § 524,

(a) A discharge in a case under this title –
> …
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived … .

    E.      "A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, -- U.S. --, 139 S.Ct. 1795, 1804 (2019). "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* at 1799.

    F.      "[T]he creditor who attempts to collect a discharged debt is violating … an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001). A reasonable attorney's fee is a "standard remed[y] in cases of civil contempt." *Id.* at 916 (citation omitted).

    G.      Whether Rosemary violated the injunction arising from Danny's Discharge (the "Discharge Injunction") turned on whether the Judgment was discharged in Danny's Case. Rosemary's proof of claim asserted that the Judgment represented a DSO as defined in § 101(14A) that was not discharged pursuant to § 523(a)(5). In the Adversary Proceeding, the Court concluded the Judgment was not a DSO and therefore was not excepted from discharge. Accordingly, Rosemary's attempts to collect on the Judgment via her actions in the Contract Action violated the Discharge Injunction.

    H.      Whether the Court may hold Rosemary in civil contempt for violating the

Discharge Injunction depends on whether there was an objectively reasonable basis for concluding that Rosemary's conduct might be lawful. The Court concludes that there was no objectively reasonable basis for Rosemary to believe that she was entitled to take judicial action in the Plenary Court, or otherwise, to collect the Judgment. Persuasive on this point are the following facts:

(1) Rosemary was aware of the premarital agreement that waived the right to alimony between the parties.

(2) Rosemary was aware of the Vacating Order issued in the Divorce Action.

(3) Rosemary was aware that neither party testified at the trial in the Contract Action that the Contract was intended to provide child support. Rosemary did not bring the Contract Action on behalf of the parties' child. The Judgment entered in Rosemary's favor in the Contract Action did not in any way refer to child support, spousal support, or alimony.

(4) The Court earlier concluded "that neither the parties (at the time they entered into the Contract), the Divorce Court nor the Plenary Court intended Danny's agreement to pay the parties' mortgage to be 'in the nature of support', and the Divorce Court's explicit determination that the Contract was outside the scope of the Divorce Action is dispositive."[5] Nothing presented with respect to the Motion changes such conclusion.

(5) Pursuant to § 501(a)(1)(B)(i) and (a)(4), Rosemary was obligated to file a schedule of all assets in Rosemary's 2011 Case and in Rosemary's 2017 Case and to surrender to the chapter 7 or chapter 13 trustee, as the case may be, all property of the estate. The Judgment was both an asset and property of the estate, but Rosemary did not disclose or surrender the Judgment to the chapter 7 or chapter 13 trustees. It was not objectively reasonable for Rosemary to believe that she continued to have an interest in the Judgment that she could collect after not

---

[5] AP Findings and Conclusions, ¶ R.

disclosing or surrendering the Judgment in either of such bankruptcy cases.

I. Accordingly, the Court concludes that Rosemary's beliefs that the Judgment represented a DSO that was not discharged in Danny's Case and that she could take enforcement action to collect the Judgment were not objectively reasonable. Rosemary's argument regarding reliance on poor legal advice is insufficient to shield her from a finding of contempt.

J. The Court concludes that an appropriate remedy is an award of attorney's fees. *Cox,* 239 F.3d at 916-17. The Court has thoroughly reviewed the *Attorney Fee Affidavit*, and in light of the complexity and nature of Danny's Case, the Adversary Proceeding, and the Contract Action, the Court concludes that $32,692.50 represents a reasonable attorney's fee.

### Decision

Based on the foregoing, the Court:

(A) GRANTS the Motion;

(B) HOLDS Rosemary Welch in CIVIL CONTEMPT for violating the Discharge Injunction; and

(C) AWARDS $32,692.50 to Danny Joe Welch as a remedy for Rosemary's violation of the Discharge Injunction.

To purge the contempt, Rosemary shall pay $32,692.50 to Danny, in care of his counsel, within 60 days.

Consistent with these findings of fact and conclusions of law, the Court will enter a further monetary judgment in favor of Danny and against Rosemary contemporaneously herewith.

IT IS SO ORDERED.

###